UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | | |
|---|---|---|
| WILLIAM PETREY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 2:16-CV-72-GFVT-REW |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| DON BOTTOM, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

\* \* \* \* \* \* \* \* \* \*

Petitioner, William Petrey, is a Kentucky inmate. DE #1 (Petition), at 1. On August 26, 2009, the Kenton Circuit Court entered judgment against Petitioner after a jury convicted him of four counts of first-degree sodomy, one count of first-degree sexual abuse, one count of possession of marijuana, and one count of possession of drug paraphernalia. *See Petrey v. Commonwealth* (*Petrey I*), No. 2009-CA-1592-MR, 2012 WL 3628880, at *1 (Ky. Ct. App. Aug. 24, 2012). The court sentenced him to fifteen (15) years in prison. *See id.* On May 3, 2016,[1] Petitioner filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. DE #1-1, at 6. The Court conducted an initial review of the filing and found it to appear timely and in the correct form. DE #3 (Order). After an extension of time, *see* DE #11 (Order), Respondent, Warden Don Bottom, responded on August 5, 2016. DE #13 (Response). Petrey timely replied. DE #15 (Reply).[2]

---

[1] This date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (*per curiam*). Here, Petrey affirmed under penalty of perjury that he executed and mailed the petition on May 3, 2016. DE #1, at 18.

[2] The reply offered nothing of substance and ignored the many procedural obstacles in the petition's path.

Having reviewed the submissions under the applicable standards, the Court **RECOMMENDS** that the District Court **DENY** and **DISMISS** the petition **WITH PREJUDICE** and wholly **DENY** a Certificate of Appealability. In addition to applicable procedural bars, as to some claims, Petitioner fails in all respects to justify displacing the treatment of the matter by the courts of the Commonwealth.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On May 15, 2008, law enforcement arrested William Petrey following execution of a search warrant and the discovery of incriminating evidence. DE #13-3, at 1-2 (Citation). On July 31, 2008, a Kenton County grand jury indicted Petrey on four counts of first-degree sodomy, one count of first-degree sexual abuse, one count of possession of drug paraphernalia (first offense), and one count of possession of marijuana. *Id.* at 3-4 (Indictment). The Court of Appeals articulated the underlying facts:

> At the time of the events in question, Petrey lived in a multi-unit apartment complex in Park Hills, Kentucky. The victim in this case also lived in the same apartment complex. Both Petrey and the victim were habitual drug users. By her own account, the victim used a litany of drugs, including Oxycontin, Vicodin, and Percocet. She also had an addiction to methadone and had begun visiting a methadone clinic.

> Petrey and the victim became friends. According to Petrey, this eventually progressed into a full sexual relationship. Many aspects of this relationship could be described as untraditional. Petrey testified that the two often used sexual devices and included a woman named Kathy Marcum in their activities. Marcum verified this testimony. Petrey and Marcum also testified that drug use frequently preceded these encounters.

> At some point prior to May 15, 2008, the victim's live-in boyfriend, Kevin Patterson, received a letter from a man named Jack Marcum. The letter contained information concerning the victim's relationship with Petrey. Marcum testified that the victim 'freaked out' when Patterson received this letter because he was her sole source for shelter and financial support.

> On May 15, 2008, the victim went to Petrey's apartment to smoke marijuana and to request a ride to the methadone clinic. Petrey eventually took her to the clinic,

2

which was in Lawrenceburg, Indiana. Once at the clinic, the victim saw her cousin and claimed that Petrey had raped her by having sex with her while she was unconscious. Her cousin then took her to see the Chief of Police for Park Hills, Ricardo Smith, to report the incident. Chief Smith took a statement from the victim in which she discussed how she had performed oral sex on Petrey in exchange for rides to the clinic in the past, along with other aspects of their sexual encounters. The victim also told Chief Smith that various drugs and drug paraphernalia could be found at Petrey's apartment, along with a videotape showing her being sexually assaulted.

Chief Smith then sought and obtained a search warrant for Petrey's apartment based on the victim's statement. Chief Smith later testified that he was aware that the victim had been to a methadone clinic prior to giving her statement and that she had slurred her words during their conversation, but he did not include anything about this in the affidavit that he submitted to obtain the warrant. During the ensuing search, police found drugs, drug paraphernalia, and a video of Petrey and the victim engaging in a number of sexual acts. The victim appears to be in an unconscious state in the video.

*Petrey I*, 2012 WL 3628880, at *1 (footnote omitted).

At trial, the jury convicted on all counts, *see id.* at 43-46 (Verdicts), and the court sentenced Petrey to a total 15-year prison term, in accordance with the jury's sentencing recommendation, *see id.* at 60-65 (Final Judgment).

Petrey appealed; on August 24, 2012, the Kentucky Court of Appeals affirmed. *Petrey I*, 2012 WL 3628880, at *6. The Kentucky Supreme Court denied discretionary review. *See Petrey v. Commonwealth* (*Petrey II*), No. 2012-CA-2096-MR, 2015 WL 4880273, at *1 (Ky. Ct. App. Aug. 14, 2015). In a parallel proceeding, Petitioner filed (on March 12, 2012, before direct review was final) a *pro se* RCr 11.42 motion, which the Circuit Court denied without a hearing on September 12, 2012. *See id.* Petitioner appealed; the Kentucky Court of Appeals affirmed the denial on August 14, 2015. *Id.* at *2. The Kentucky Supreme Court again denied discretionary

review on February 10, 2016. DE #13-5, at 244. Petrey then timely filed the current federal petition for a writ of habeas corpus on May 3, 2016. *See* DE #1.[3]

## II.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended 28 U.S.C. § 2254, established a "'highly deferential standard for evaluating state-court rulings,' which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 125 S. Ct. 847, 853 (2005) (quoting *Woodford v. Visciotti*, 123 S. Ct. 357, 360 (2002) (*per curiam*)). Specifically, the AEDPA provides,

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). In contrast, when a state court has not addressed in any manner the merits of a properly presented claim, the reviewing federal court assesses the claim *de novo*. *Van v. Jones*, 475 F.3d 292, 293 (6th Cir. 2007). A petitioner bears the burden of justifying relief. *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009) (quoting *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003)).

---

[3] Petrey has also pursued state post-conviction relief via other mechanisms and engaged in collateral federal civil litigation. *See generally* DE ##13-6 and 13-7. This § 2254 petition does not directly implicate or involve those matters, but the Court mentions them for completeness. The Court also notes that this record does not contain the Kentucky trial video. The Court considered whether to order record supplementation, but ultimately decided against it based on the manifest lack of merit in Petrey's claims. Petrey, as the party with the burden, did not perceive any necessity to secure or tender such evidence.

"Under the 'contrary to' clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.'" *Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000) (O'Connor, J., opinion of the Court for Part II)). In this regard, "clearly established law under the Act encompasses more than just bright-line rules laid down by the Court. It also clearly includes legal principles enunciated in the Court's decisions." *Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir. 2002). At the same time, habeas review focuses on the holdings of the Supreme Court, not its *dicta* or holdings of the courts of appeals. *Williams*, 120 S. Ct. at 1523 (regarding *dicta*); *id.* at 1507 (quoting *Lindh v. Murphy*, 96 F.3d 856, 869 (7th Cir. 1996)) (regarding reliance on jurisprudence from courts of appeals).

As to the "unreasonable application" clause, the Supreme Court has held that "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S. Ct. at 1523. The writ may not issue solely because the state court incorrectly applied the relevant Supreme Court precedent; instead, the state court's misapplication must have been objectively unreasonable. *Id.* at 1521-23. In determining whether the state court misapplied Supreme Court precedent, a federal court may look only to the state of the case law "as of the time of the relevant state-court decision." *Id.* at 1523. Ultimately, the habeas court should not grant relief "so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 124 S. Ct. 2140, 2149 (2004)).[4]

Concerning any "unreasonable determination of the facts" theory, a federal court must presume all determinations of factual issues by the state court to be correct unless the petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).[5] Findings of fact entitled to the presumption include "[p]rimary or historical facts found by state courts,"

---

[4] The Supreme Court has cautioned courts in this Circuit about the rarity of warranted relief under § 2254. The standard is "difficult to meet." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013)). State mishandling, under subsection (d), must essentially be inarguable. *See Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (*per curiam*) ("[F]ederal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."). Unless the state transgresses the clearly established *holdings* of the Supreme Court, or applies them so unreasonably as to exceed fair doubt, statute-based deference commands that the federal courts resist involvement. *See Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013) ("Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.").

[5] There is some lack of clarity concerning the interplay between §§ 2254(d)(2) and 2254(e)(1). Each distinctly assures a measure of deference to state court factual determinations. Although the Supreme Court declined to guide the interaction in *Wood v. Allen*, 130 S. Ct. 841, 845 (2010), the Sixth Circuit has said,

> With respect to § 2254(d)(2), "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court-proceeding[.]"

*Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller-El v. Cockrell*, 123 S. Ct. 1029, 1041 (2003)); *see also McMullan v. Booker*, 761 F.3d 662, 670 & 670 n.3 (6th Cir. 2014); *Shimel v. Warren*, 838 F.3d 685, 697 (6th Cir. 2016); *Rice v. White*, 660 F.3d 242, 254 n.6 (6th Cir. 2011). In fact, the Sixth Circuit recently acknowledged that "the interplay between § 2254(e)(1) and § 2254(d)(2) remains unresolved." *Hawkins v. Woods*, 651 F. App'x 305, 309 n.2 (6th Cir. 2016); *see also Rice*, 660 F.3d at 254 n.6 (eschewing the opportunity to clarify "the precise interplay between § 2254(d)(2) and (e)(1)"). The (d)(2) overlay is "demanding but not insatiable." *Ayers*, 623 F.3d at 308 (quotation omitted); *see also Feldman v. Thaler*, 695 F.3d 372, 377 (5th Cir. 2012) (describing (e)(1) as a "supplement[]" to (d)(2), providing an "'arguably more deferential' standard of review for state court findings of fact") (citation omitted).

*Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000), as well as factual findings made by state appellate courts based upon the trial record. *Bowling v. Parker*, 344 F.3d 487, 497 (6th Cir. 2003) (citing *Sumner v. Mata*, 101 S. Ct. 764, 769 (1981)). However, the presumption does not fully apply when, as with an ineffective assistance claim resolved on the merits, the § 2254 petition involves mixed questions of law and fact. *See Strickland v. Washington*, 104 S. Ct. 2052, 2070 (1984); *Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2007). In essence, while federal courts need not defer to ultimate findings regarding, *e.g.*, ineffectiveness of counsel, the "underlying facts" supporting such state court decisions still warrant deference. *Strickland*, 104 S. Ct. at 2070; *accord Abdur'Rahman v. Bell*, 226 F.3d 696, 702 (6th Cir. 2000).

Even absent an opinion articulating the state court's reasoning, a habeas court yet must determine whether the state court's decision is the result of an unreasonable legal or factual conclusion. *Harrington*, 131 S. Ct. at 784. Indeed, "a state court need not cite or even be aware of [the Supreme Court's] cases under § 2254(d). . . . Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* Unless the petitioner affirmatively shows that the state court's decision "did *not* involve a determination of the merits of his claim," such as where the opinion expressly states the claim was denied on procedural grounds, § 2254(d) applies on habeas review. *Id.* at 784-85. Where the state court resolves a petitioner's claim of error without articulating its reasons for the denial, then:

> Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

*Id.* at 786; *accord Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000) (independent review where state court does not articulate reasoning for denial is "not a full, de novo review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA").

If errors occurred, the reviewing court must evaluate whether they constitute "trial errors, . . . whose effect may be 'quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt,'" or "'structural defects,' which 'defy analysis by harmless error.'" *Jensen v. Romanowski*, 590 F.3d 373, 378 n.4 (6th Cir. 2009) (citing and quoting *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1717 (1993)). With "trial errors," the reviewing court evaluates directly whether the error had a substantial and injurious effect in determining the jury's verdict or other case result. *Id.* at 378. The query focuses on whether "grave doubts" exist as to the effect of error. *Id.* at 379 (citing *O'Neal v. McAninch*, 115 S. Ct. 992, 994 (1995)). If any error had little or no effect, then no habeas relief should be afforded. *Id.* However, if the reviewing court finds itself at least in "virtual equipoise" about the harmlessness of the error, the court must grant the writ. *Id.* As to "structural defects," reversal of the state-court conviction may be required without harmless error analysis. *Id.* at 378 n.4. Generally, federal habeas corpus relief does not lie for errors in the application of state law unless such errors result in the denial of a fundamentally fair trial. *See Estelle v. McGuire,* 112 S. Ct. 475, 479-80 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions[.]"); *accord Brooks v. Anderson*, 292 F. App'x 431, 437 (6th Cir. 2008).

## III.    ANALYSIS

Petrey raises five general grounds for relief: that (1) "[r]eversible error [occurred] for failing to suppress evidence obtained by [an] invalidly procur[]ed warrant"; (2) "[r]eversible error [occurred] for failing to instruct [the] jury on [a] lesser included offense of sexual misconduct"; (3) "[m]ultiple counts of sodomy in one continuous act violate[ a] constitutional right against double jeopardy"; (4) the "Circuit Court [erred in its] denial of [an] evidentiary hearing and appointment of counsel on [the] RCr 11.42 proceeding"; and (5) counsel provided ineffective assistance (based on numerous separate sub-allegations). *See generally* DE #1, at 9-14; *see also* DE #1-1 (Memorandum in Support). The Court addresses each argument in turn.

Before proceeding, the Court makes a general comment concerning its handling of Petrey's many scattershot claims. "The extent to which [Petrey's] claims are procedurally defaulted [or otherwise barred may be] a nettlesome question; the extent to which they are meritless, much less so." *Storey v. Vasbinder*, 657 F.3d 372, 380 (6th Cir. 2011).[6] Therefore, in the spirit of judicial economy, and because the Court would likely include a plenary, alternative merits review anyway, the Court sets aside extensive discussion of any potential procedural bars and "cut[s] to the merits here." *Id.*; *see also Jones v. Bowersox*, 28 F. App'x 610, 611 (6th Cir. 2002) ("In this case it is considerably easier and thus more judicially efficient to affirm on the merits than to untangle the complexities of" procedural issues.). Still, though, the Court will note § 2254 procedural hurdles where they exist.

### A.    *Suppression*

First, Petrey argues that the state court erred by "failing to suppress evidence obtained by [an] invalidly procur[]ed warrant." DE #1, at 5. Petrey states that the Park Hills Police Chief,

---

[6] As evidenced, *e.g.*, by Respondent's turbid and protracted memorandum in opposition. DE #13.

Ricardo Smith, "with[eld] evidence that both Ms. Majewski[7] and Petitioner were mentally disabled to the extent they were receiving social security disability. Smith submitted false information to the court to receive a warrant . . . when he made statements that were not made by Ms. Majewski[.]" *Id.* Petrey continues:

> The affidavit in support of the search warrant did not contain any statements by the officer / affiant that: (1) an independent investigation was made to corroborate the information provided to the officer by the victim / informant; or (2) from which the veracity of the victim / informant could be determined. The search warrant was issued on the uncorroborated statements of the victim, as an informant, without even a bare recitation therein that the victim was a reputable source of the facts upon which the officer sought the search warrant. On the contrary, Chief Smith knew of the mental incapacity as well as history of drug use of victim / informant yet made no independent corroborative investigation.

DE #1, at 5-6;[8] *see also* DE #1-1, at 11, 13-19.

The general federal standard concerning Petrey's argument is the following:

"[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 98 S. Ct. 2674, 2676 (1978). Further, "a search warrant is invalid when the supporting affidavit contains a statement, necessary to the finding of probable cause, that is later demonstrated to be false and included by an affiant knowingly and intentionally, or with a reckless disregard for the truth." *United States v. Duval*, 742 F.3d 246, 250 (6th Cir. 2014)

---

[7] Erin Majewski is the victim in this case. *See also* DE #1-1, at 2. The Kentucky Court of Appeals previously withheld her name due to "the sensitive nature of this case[.]" *Petrey I*, 2012 WL 3628880, at *1 n.1. No party here has sought a seal or redaction of any document identifying Ms. Majewski by name.

[8] Petrey copied the bulk of this paragraph verbatim from Judge Caperton's concurring opinion. *See Petrey I*, 2012 WL 3628880, at *6 (Caperton, J., concurring). Judge Caperton *explicitly* noted that Petrey had *not* made these arguments on appeal. This likely introduces clear § 2254 obstacles.

10

(citing *Franks*, 98 S. Ct. at 2676). A "defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden." *United States v. Green*, 572 F. App'x 438, 441 (6th Cir. 2014) (internal quotation marks and citation omitted).

A warrant normally rises or falls based only on information within the four corners of the pertinent application. *See United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006). The Supreme Court clearly set the standard for going beyond the four corners in the *Franks* context:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. . . . Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Franks*, 98 S. Ct. at 2684.

*Franks* makes no particular mention of affidavit *omissions* (which is mainly what Petrey complains about here). However, "material omissions are not immune from inquiry under *Franks*, . . . [but] an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997). "This is so because an allegation of omission potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit. If the defendant does succeed in making a preliminary showing that the government affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit, the court must then consider the affidavit including the omitted portions and

11

determine whether probable cause still exists." *Id.* (internal citation and quotation marks omitted); *see also United States v. Merrell*, 330 F. App'x 556, 560 (6th Cir. 2009); *United States v. Fowler*, 535 F.3d 408, 415-16 (6th Cir. 2008) ("This court has repeatedly held that there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement.").

Foundationally, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const., amend. IV. Probable cause consists of "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Jackson*, 470 F.3d at 306 (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). To determine probable cause, an issuing judge must examine the totality of the circumstances and find "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Higgins*, 557 F.3d 381, 389 (6th Cir. 2009) (internal quotation marks omitted). A supporting affidavit must sufficiently demonstrate the existence of a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)).

When evaluating whether a warrant application presented probable cause, a reviewing court must accord "great deference" to the issuing judge's determination. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006). Such deference ensures than "an issuing [judge's] discretion [will] only be reversed if it was arbitrarily exercised." *See United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000). The reviewing court must uphold the issuing judge's probable cause determination if a "substantial basis" existed for the judge to conclude "that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 103 S. Ct. 2317, 2331 (1983); *Allen*, 211

F.3d at 973. The Court examines the affidavit at issue through a prism of common sense. *Gates*, 103 S. Ct. at 2331, 2333.

Here, the Kentucky Court of Appeals reasonably resolved Petrey's suppression claim, which means Petrey gets no § 2254 relief. As a starting point, of course, the Kentucky suppression standard mirrors the federal standard. *See, e.g.*, *Commonwealth v. Cox*, 491 S.W.3d 167, 169 n.2 (Ky. 2016) ("The Kentucky Constitution on this subject mirrors its federal counterpart and is considered co-extensive to the Fourth Amendment. . . . Section 10 of the Kentucky Constitution provides no greater protection than does the federal Fourth Amendment."); *Commonwealth v. Pride*, 302 S.W.3d 43, 47-48 (Ky. 2010) ("The standard for reviewing the issuance of a search warrant is provided by *Illinois v. Gates*[, 103 S. Ct. 2317 (1983).]"). The Kentucky court here cited both *Gates* and *Franks* in its suppression analysis and accurately set forth the governing standard. *Petrey I*, 2012 WL 3628880, at *2-*3. Kentucky's core analysis was the following:

> At best, the failure to include the omitted information in the affidavit was negligent or an innocent mistake. 'Allegations of negligence or innocent mistake are insufficient' to vitiate a facially-valid affidavit. *Franks*, 438 U.S. at 171, 98 S. Ct. at 2684. As noted by the trial court, Chief Smith testified that nothing about the victim's actions, speech, or attitude led him to believe that she was being untruthful or was intoxicated. In light of this fact, the omission in question does not rise to the level of intentionally or recklessly misleading.
>
> It is also highly questionable whether the victim's recent visit to a methadone clinic, a legal medical treatment for drug addiction, was material to her allegations of rape or would have negated a finding of probable cause. The victim told police that she had been raped by Petrey, had been in Petrey's residence within the previous twenty-four hours, and had seen a variety of drugs. She additionally reported that during this same time, she watched a videotape containing footage of her being sexually assaulted by Petrey and that the videotape was still inside of Petrey's apartment. In light of these facts, the judge would still have a substantial basis for a finding of probable cause—even with inclusion of the omitted information.

13

Consequently, after careful review of the record, we hold that the trial court did not err by finding that there was substantial evidence supporting the decision to issue a search warrant for Petrey's residence based on the information contained in the subject affidavit. Petrey's argument that the affidavit supporting the warrant intentionally or recklessly omitted material facts is rejected.

*Petrey I*, 2012 WL 3628880, at *4. The trial court even gave Petrey a hearing on the suppression motion, where he had a full opportunity to probe the bases for relief, but the Commonwealth determined the arguments were not meritorious. Thus, per the state court, the warrant was valid despite Petrey's arguments concerning Smith's omissions of Majewski's drug use or recent visit to a methadone clinic.[9] Kentucky's reasoned and persuasive analysis surely falls within the AEDPA's realm of protected state court decision-making, which compels substantial deference on federal habeas review.[10]

The Kentucky court's analysis correctly identifies and reasonably applies controlling Supreme Court precedent. There is, accordingly, no basis for habeas relief on this record. Even if the Court considered Petrey's two new arguments (which he improperly did not present for

---

[9] In fact, Smith gave particularized reasons for not including statements regarding Majewski's drug / methadone use, which Kentucky accepted as credible. *Petrey I*, 2012 WL 3628880, at *3 (Smith "testified that [Majewski] was 'excited,' 'scared,' and 'crying.' He noted that she slurred her words somewhat when answering his questions, but he attributed this to her being 'excited' and 'upset' about what had happened to her. Chief Smith also testified that she informed him that she had not taken any other drugs, other than what was given to her at the clinic, prior to her arrival at the police station. He also indicated that [Majewski] did not appear to be intoxicated. Chief Smith further testified that the victim appeared to be cognizant of what was going on around her, she responded affirmatively to all questions posed to her, and she appeared focused on the interview with him. Ultimately, Chief Smith took the victim's allegations seriously and did not believe that her visit to the methadone clinic had impacted her ability to inform her allegation against Petrey."). The trial court, for its part, noted Chief Smith's 31 years of law enforcement experience and credited his assertion that he could tell "whether a person was 'high' or truthful." DE #13-3, at 7.

[10] To the extent Petrey inserts a new claim that Smith should have included a reference to Petrey's and/or Majewski's receipt of disability benefits to show mental disability, there is no competent proof that Smith even knew that either person received disability. Further, Petrey establishes no connection between disability benefit receipt and incompetency; the former by no means proves the latter. Thus, inclusion of a reference to disability benefit receipt would not have altered the probable cause determination.

14

decision by the state courts)—that the affidavit did not contain any statements (1) that law enforcement made an independent investigation to corroborate the information provided by the victim/informant, or (2) from which the veracity of the victim / informant could be determined—neither would change the result.

As a starting point, a "known informant's statement can support probable cause even though the affidavit fails to provide any additional basis for the known informant's credibility[.]" *United States v. Kinison*, 710 F.3d 678, 682-83 (6th Cir. 2013). Here, Chief Smith recounted the information Ms. Majewski relayed to the police. She said that Petrey "ha[d] supplied her with drugs while inside [the subject] apartment." DE #1-2, at 2. She said that she, "within the past 24 hours, [had] seen marijuana, cocaine, and a variety of other controlled substances, including but not limited to Xanax and Valium, inside the apartment[.]" *Id.* Majewski professed to watching a videotape (which was "still inside the above stated apartment") of her and Petrey engaging in sexual activities "and can confirm her identity as the person being sexually assaulted on the tape." *Id.* at 2-3. She had given Smith a great amount of detail as to where the tape would be located and concerning its packaging. *Id.* at 8.

While, as a general matter, courts generally prefer independent police corroboration when an affidavit gives no indication of an informant's reliability, "[t]hat is not a factor here." *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (*en banc*). Here, the informant "was not anonymous, but personally known to the detective who swore the affidavit, and who revealed the [informant]'s name to the [issuing judge]." *Id.* In *Allen*, as here, "[t]he information alleged was of direct personal observation of criminal activity. Corroboration is not a necessity in such a case. A requirement that information from such a[n informant] should invariably have to be personally corroborated by further police investigation would aid lawbreakers[.]" *Id.* This holds

the same force when the informant is the crime victim herself; a victim's account may itself suffice as probable cause. *See, e.g.*, *United States v. Harness*, 453 F.3d 752, 754-55 (6th Cir. 2006) (citing *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999)); *see also United States v. Amerson*, 38 F.3d 1217, No. 93-6360, 1994 WL 589626, at *3 (6th Cir. Oct. 21, 1994) (table) ("Sandra Martin's [a bank teller victim's] positive identification of the defendant was sufficient to establish probable cause for Amerson's warrantless arrest."); *United States v. Ingram*, 985 F.2d 562, No. 92-5367, 1993 WL 5914, at *2 (6th Cir. Jan. 13, 1993) ("[S]tatements of victims and eyewitnesses of crimes are entitled to a presumption of reliability and veracity without independent corroboration.") (table).

"The appropriate analysis . . . is the adequacy of what the affidavit does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Dyer*, 580 F.3d 386, 391 (6th Cir. 2009) (internal quotation marks and alteration omitted) (cited by Judge Caperton). Here, as in *Dyer*, and unlike in a prior case where the Sixth Circuit found probable cause lacking, "the affidavit in this case avers that the confidential informant witnessed the [illegal activity] on the premises specified in the search warrant." *Dyer*, 580 F.3d at 391. Further, "[t]he statements of an informant, whose identity was known to the police and who would be subject to prosecution for making a false report, are thus entitled to far greater weight than those of an anonymous source." *Id.* (internal quotation marks and alteration removed). The Sixth Circuit could not be clearer, in a parallel factual scenario: "only when no substantial supporting evidence exists within the four corners of the affidavit as to the informant's reliability do courts require substantial independent police corroboration. Because the informant witnessed the illegal activity on the premises searched and was known to the officer writing the affidavit, there were

sufficient indicia of reliability without substantial independent police corroboration." *Id.* at 392 (internal citation removed).

The Court sees no basis for a Fourth Amendment violation, and regardless, in this habeas context, it does not take a fresh look at the warrant application. Rather, its duty is merely to determine whether the state court reasonably determined that the issuing judge had a substantial basis upon which to approve the warrant. In this doubly deferential setting, the Kentucky courts' denial of the motion to suppress clearly passes muster. Petrey cites no United States Supreme Court case that Kentucky unreasonably applied. He fails to justify § 2254 relief, under the applicable standard, in any way. At most, Petrey argues that Kentucky got the question wrong— a contention the Court wholly rejects—but, even if true, would in this context lead to no habeas relief anyway. *Williams*, 120 S. Ct. at 1521-23.[11]

---

[11] The Court also notes that most of Petrey's factual allegations are wrong, per the evidence that he himself tendered. [He did not authenticate or in any way lay an evidentiary foundation for the tendered transcripts.] For example, Petrey argued that Smith misrepresented Majewski's comments regarding watching the video and confirming her identity: "[t]his information proves that Smith lied in his affidavit to receive a warrant[.] . . . She had not seen the tape at the time of his applying for the warrant[.]" DE #1-1, at 15-16. To the contrary, Majewski is the one who brought up the tape—"He even has a tape of me sleeping . . . playing with my vagina and my anus."—and said that she watched it "a couple weeks ago." DE #1-2, at 7-8. She provided very specific details regarding the tape. *Id.* at 8 ("[T]he tape is sitting . . . on the side of the TV. It's in a blue case. . . . It says Sony on it."). Her remark five days later (five days after warrant issuance, DE #1-2, at 4 (Warrant), and Petrey's arrest, DE #13-3, at 1 (Citation noting a 5-15-08 arrest date and that the "officer served a search warrant @ above address on said person")) that Petrey did not video them together while they were watching movies, *id.* at 17, is apropos to whether Petrey videoed their sexual activities. Even if, for the sake of argument, and given some of Majewski's subsequent comments, *see id.* at 18, she later realized she may have been factually incorrect about appearing in the video, this does not invalidate the previously executed warrant on the probable cause existing at the time. *See, e.g.*, *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir. 1993); *Liser v. Smith*, 254 F. Supp. 2d 89, 96-100 (D.D.C. 2003). Petrey certainly makes no showing that the warrant would not have issued had the single remark concerning the videotape been omitted. The Court also, contrary to Petrey's assertion, sees no Majewski admission to "smok[ing] pot" before the Methadone remark. Again, she said she smoked pot in the second interview, but that was 5 days after the warrant issued and law enforcement arrested Movant.

B.    *Jury Instructions*

Second, Petrey argues that the state court erred by "failing to instruct [the] jury on [a] lesser included offense of sexual misconduct." DE #1, at 8. Petrey murkily expounds:

> The whole basis of the multiple counts was the supposed inability of the victim to give consent because she was physically helpless due to the effects of the drugs she was using. Petitioner pu[t] on evidence challenging this assertion by showing that the victim remained aware of her surroundings at the time of the subject acts. On video, she appeared to be flaccid, but was at the same time in fact lucid, so much as one can be on drugs. This contradiction in appearance vs. awareness was common in these activities as testified to by Cathy[12] Marcum, a sometimes participant in Ms. Majewski's and Petitioner's sexcapades.

*Id.*

Kentucky criminalizes sexual misconduct at KRS 510.140. The Kentucky Court of Appeals succinctly described why Petrey is entitled to no state-law relief on this ground: "KRS 510.140 applies only to cases where the victim is fourteen or fifteen and the defendant less than twenty-one, or where the victim is twelve-to-fifteen and the defendant is less than eighteen years of age. Because both Petrey and the victim were of majority age at the time of the subject offenses, the trial judge's refusal to instruct the jury on sexual misconduct was not erroneous." *Petrey I*, 2012 WL 3628880, at *5 (internal quotation marks and citations removed); *see also, e.g.*, *Deno v. Commonwealth*, 177 S.W.3d 753, 762-63 (Ky. 2005) (applying the age-based rule, "developed from reading KRS 510.140 as interpreted by its commentary," "[a]lthough this statute would seem to apply to the case at bar" and holding: "because the victim was of majority age and the Appellant was of majority age, the trial judge's refusal to instruct the jury on sexual misconduct was not erroneous"). This time-tested interpretation endures today. *Jenkins v.*

---

[12] Petrey later identifies Ms. Marcum as "Kathi." DE #1-1, at 2. The Kentucky Court of Appeals identified her as "Kathy." *Petrey I*, 2012 WL 3628880, at *1.

*Commonwealth*, 496 S.W.3d 435, 449-55 (Ky. 2016) (extensively and foundationally reevaluating and reaffirming the age-based rule).

Of course, Petrey identifies no federal ground for relief here, anyway. Petrey does not specifically identify any United States Supreme Court case that the Kentucky courts unreasonably applied.[13] It is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions[.]" *Estelle*, 112 S. Ct. at 479-80; *see also Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007). Petrey's claim thus leads to no relief.

C.    *Double Jeopardy*

Third, Petrey argues that "[m]ultiple counts of sodomy in one continuous act violate[ the] constitutional right against double jeopardy." DE #1, at 9. Petrey acknowledges "engaging in various acts of deviate sexual intercourse," but argues that they "constituted one continuous act." *Id.* Movant emphasizes that "all sexual exploitations between Ms. Majewski and Petitioner were consensual." *Id.*

No person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The double jeopardy clause prohibits "multiple punishments for the same crime." *United States v. Swafford*, 512 F.3d 833, 844 (6th Cir. 2008). A defendant may thus challenge an Indictment on the basis of alleged "duplicity or multiplicity." *Id.* The Sixth Circuit has succinctly set out the general federal standard:

> Multiplicity is charging a single offense in more than one count in an indictment. Multiplicity may result in a defendant being punished twice for the same crime, or may unfairly suggest that more than one crime has been committed. To determine

---

[13] Even if a jury instruction is "incorrect under state law," that "is not a basis for habeas relief." *Hanna v. Ishee*, 694 F.3d 596, 620 (6th Cir. 2012). Instead, Petitioner must show "that the challenged instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (internal quotation marks removed). This is a "narrow" "category of infractions." *Id.* Pelfrey makes no such showing here; indeed, the trial court's instruction was not even erroneous under state law.

if multiplicity exists, a court must first look to whether Congress intended to punish each statutory violation separately. Where this enquiry does not resolve the issue, the general test for compliance with the double jeopardy clause looks to whether each provision requires proof of a fact which the other does not. Using the same evidence to prove violations of two statutes does not violate [relevant case law.]

*Id.* (internal citations and quotation marks removed).[14]

Here, the Kentucky Court of Appeals described Petrey's acts as follows: Petrey (1) inserted a "'white sex toy' into the victim's anus"; (2) inserted a "'wood sex toy' into the victim's anus"; (3) rubbed "his penis in and/or on the victim's vagina" [although it may have intended to refer to Majewski's mouth, *see* DE #13-3, at 38]; and (4) placed "his mouth on the victim's vagina." *Petrey I*, 2012 WL 3628880, at *5. These separate incidents—each, per the Kentucky courts, a distinct crime—give rise to no double jeopardy concerns. *Cowherd v. Million*, 260 F. App'x 781, 786-87 (6th Cir. 2008) (rejecting double jeopardy challenge when the evidence "indicated that the petitioner twice penetrated [the victim's] vagina with his penis against her will, twice penetrated her anus with his penis against her will, and twice forced his penis into her mouth") (distinguishing *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005), where "the defendant was charged with 20 identically-worded counts of child rape and 20 identically-worded counts of felonious sexual penetration, all occurring at some unspecified time" and "neither the defendant nor any reviewing court could ascertain for certain whether the resulting 40 convictions were in fact connected to 40 separate, proven crimes").

---

[14] "An indictment is duplicitous if it 'joins in a single count two or more distinct and separate offenses.'" *United States v. Campbell*, 279 F.3d 392, 398 (6th Cir. 2002) (quoting *United States v. Shumpert Hood*, 210 F.3d 660, 662 (6th Cir. 2000)). "The vice of duplicity is that a jury may find a defendant guilty on the count without having reached a unanimous verdict on the commission of any particular offense." *United States v. Boyd*, 640 F.3d 657, 665-66 (6th Cir. 2011).

The jury instructions confirm this appropriate separate recognition of Petrey's 4 distinct acts (involving a white sex toy, a wood sex toy, penis-vagina/mouth contact, and mouth-vagina contact). DE #13-3, at 36-39. This District has confirmed that a petitioner's unsupported allegation (which is all Petrey here presents) "that the multiple acts of sodomy performed by him constituted a single course of conduct . . . is insufficient to prove a double jeopardy violation[.]" *Morton v. Crews*, No. 10-148-DLB, 2012 WL 1410252, at *16 (E.D. Ky. Mar. 27, 2012) (internal quotation marks and citations removed). Petrey again fails in his basic obligation to identify federal law or a United States Supreme Court case that the Kentucky courts unreasonably applied; his claim is without merit.

D.    *Denial of RCr 11.42 Evidentiary Hearing and Appointment of Counsel*

Fourth, Petrey argues that it was "imperative [that] his RCr 11.42 be heard in court with appointed counsel to supplement his pro-se motion." DE #1, at 11 (all as in original).

To the extent Petrey suggests that the Constitution requires a state post-conviction evidentiary hearing, the argument "that the state court . . . improperly denied him an evidentiary hearing . . . is not cognizable in *habeas corpus* proceedings, which cannot be used to challenge errors or deficiencies in state court post-conviction proceedings." *Cornell v. Bradshaw*, 559 F.3d 398, 411 (6th Cir. 2009); *Perez v. Rivard*, No. 2:14–CV–12326, 2015 WL 3620426, at *7 (E.D. Mich. June 9, 2015) ("The denial of an evidentiary hearing by a state court does not state a claim upon which habeas relief can be granted."); *May v. McKee*, No. 12-13037, 2014 WL 4978644, at *19-*20 (E.D. Mich. Oct. 6, 2014) ("[T]he trial court's failure to hold an evidentiary hearing, even if erroneous under state law, does not entitle petitioner to habeas relief."); *see also Williams v. Taylor*, 120 S. Ct. 1479, 1490 (2000) ("Diligence will require in the usual case that the

prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law.").[15]

To the extent Petrey insinuates a federal habeas claim regarding the state court's denial of post-conviction appointment of counsel, such a claim likewise has no merit. The United States Constitution provides no right to counsel in collateral proceedings. *See, e.g.*, *Abdus-Samad v. Bell*, 420 F.3d 614, 632 (6th Cir. 2005). The Supreme Court has explicitly said: "We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions[.]" *Pennsylvania v. Finley*, 107 S. Ct. 1990, 1993 (1987). "[T]he right to appointed counsel extends to the first appeal of right, and no further." *Id.*; *see also, e.g.*, *Reese v. Delo*, 94 F.3d 1177, 1182 (8th Cir. 1996) ("There is no right to counsel in state post-conviction proceedings[.]"); *Bryant v. McNeil*, 2011 WL 2446370, at *7 (N.D. Fla. May 17, 2011) ("Petitioner contends that his Sixth Amendment right to counsel was violated when the [state post-conviction] court refused to appoint counsel for him. This fails to state a Sixth Amendment claim. There is no right to counsel in state post-conviction proceedings." (citation removed)). Kentucky did not act contrary to or unreasonably apply federal law by denying Petrey a hearing or counsel during state post-conviction proceedings.

E.    *Competency*

Petrey characterizes the "crux of the entire case" as his own "mental incapacity and multiple psychiatric conditions[.]" DE #1-1, at 1. He professes that he is generally unable to understand "process procedure, terminology, and concepts concerning the judicial system[.]" *Id.*

---

[15] *See also May*, 2014 WL 4978644, at *19-*20 ("Petitioner also claims that the state court improperly denied him an evidentiary hearing on his second claim. Nothing in the Constitution requires a state to establish a system of postconviction review, and thus an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." (internal quotation marks removed) (later citing and quoting at length from *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007))).

To the extent Petrey makes allegations concerning misapplication of the Kentucky Rules of Evidence, the Kentucky Rules of Criminal Procedure, and the Kentucky Revised Statutes, of course, such arguments are not § 2254 fodder. *Estelle*, 112 S. Ct. at 479-80. The Court, liberally construing Petrey's motion, will evaluate the competency concerns within a federal due process framework.

Due process protections regulate the prosecution of a defendant not competent to stand trial. *See Medina v. California*, 112 S. Ct. 2572, 2574 (1992). To be competent, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *See Dusky v. United States*, 80 S. Ct. 788, 789 (1960) (*per curiam*); *see also* 18 U.S.C. § 4241(a) (phrasing federal statutory test as whether defendant is "unable to understand the nature and consequences of the proceedings him or to assist properly in his defense"). "The due-process right to a fair trial is violated by a court's failure to hold a proper competency hearing where there is substantial evidence that a defendant is incompetent." *Filiaggi v. Bagley*, 445 F.3d 851, 858 (6th Cir. 2006). The test is "whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Id.* Simple doubt is insufficient; the evidence must raise a "bona fide doubt" as to Defendant's competence. *Warren v. Lewis*, 365 F.3d 529, 533 (6th Cir. 2004).

"If before or during trial sufficient doubt arises about a defendant's competence . . . the trial court should order a competency hearing." *Cowans v. Bagley*, 639 F.3d 241, 247 (6th Cir. 2011) (internal quotation marks removed). "There are, of course, no fixed or immutable signs of incompetence, the standard is a high one, and the relevant factors—evidence of a defendant's

irrational behavior, his demeanor at trial, and any prior medical opinion on competence—are difficult to evaluate. . . . When virtually everything is potentially relevant and nothing is dispositive, reasonable minds occasionally may come to different conclusions about whether to hold a competency hearing." *Id.* (internal quotation marks and citation removed). District Courts in the Sixth Circuit have applied these principles to deny habeas motions alleging failure to conduct competency evaluations. *E.g.*, *Ciavone v. Mackie*, No. 11-14641, 2014 WL 354515, at *9-*10 (E.D. Mich. Jan. 31, 2014); *Sutton v. Rapelje*, No. 2:09-CV-10616, 2012 WL 642559, at *4-*5 (E.D. Mich. Feb. 28, 2012).

Here, of course, the trial court *did* order a mental evaluation of Petrey. DE #13-3, at 12-13 (Order). Psychologist Steven J. Simon evaluated and assessed Petitioner and reported, based on a detailed analysis, that Petrey was "competent to proceed with his legal case." *Id.* at 17-24 (Competency Evaluation Report). The report carefully followed and correctly applied the *Dusky* standard. Movant stipulated to the contents of the report. *Id.* at 25. The trial court, based on Dr. Simon's report, found Petrey competent. *Id.* at 25-26 (Order). Now, on habeas, Petrey has not presented substantial evidence (instead only unsubstantiated assertions that the record clearly belies) that he was, at any point during the state-court proceedings, incompetent. He presents no proof whatsoever of his then-incompetency, and the only evidence in the record firmly establishes that Petrey was, in fact, competent. Accordingly, there was no due process violation by a failure to further evaluate competency or conduct another unspecified examination / hearing. *Filiaggi*, 445 F.3d at 858.

F.    *Other Issues Raised in the Memorandum*

Petrey also makes a variety of cursory arguments in the memorandum. The Court, for completeness, considers each in turn.

First, any argument that the trial court incorrectly applied the Kentucky Rules of Evidence is not proper § 2254 material:

> The writ of *habeas corpus* cannot be granted on the grounds of erroneous application of state law—the words of § 2254 limit the issuance of the writ to circumstances when the state court erroneously applied "clearly established *Federal* law." 28 U.S.C. § 2254 (emphasis added). Even if the state court did incorrectly apply [state] rules of evidence, that error provides no basis for *habeas* relief.

*Robinson v. Davis*, 412 F. App'x 837, 842 (6th Cir. 2011). "[A] state court's violation of its own evidentiary law does not, *ipso facto*, provide a basis upon which a federal court may grant habeas relief." *Bey*, 500 F.3d at 519. "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 126 S. Ct. 602, 604 (2005) (*per curiam*) (reversing the Sixth Circuit's grant of § 2254 relief). Accordingly, such issues are "simply not within [the Court's] scope of review[.]" *Railey v. Webb*, 540 F.3d 393, 398 (6th Cir. 2008); *Bey*, 500 F.3d at 519 ("[S]pecifically a [state-law] ruling on evidence . . . is simply not cognizable on habeas review.").[16]

Next, Petrey argues briefly that the "[p]rosecution repeatedly exceeded fair comment on multiple occas[]ions." DE #1-1, at 9. He lists questions concerning "fond memories," root beer floats, and Petrey's sexual proclivities as examples of allegedly improper prosecutorial comments. *Id.* at 9-10.

"Inappropriate prosecutorial comments, standing alone, do not warrant a new trial." *United States v. Gonzalez*, 512 F.3d 285, 292 (6th Cir. 2008). "The correct inquiry" in this context "is whether the improper comments or actions so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Slagle v. Bagley*, 457 F.3d 501, 515 (6th

---

[16] Petrey makes no argument concerning—and thus does not demonstrate—any due process violation connected with an allegedly incorrect state-law evidentiary ruling. *See, e.g.*, *Bey*, 500 F.3d at 521-22.

Cir. 2006). Answering the inquiry requires application of a two-prong test. "First, this court determines whether the prosecution's conduct or remarks were improper. If the answer is affirmative, then the court considers four factors to decide whether the improper acts were sufficiently flagrant to warrant reversal: (1) whether the evidence against the defendant was strong, (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally." *Id.* at 516. Petrey, of course, makes no foundational showing of impropriety on this abbreviated argument. He identifies *no* federal law or United States Supreme Court case that Kentucky unreasonably applied (indeed, he does not appear to have even properly raised the issue with the Kentucky courts), and he makes no argument as to why any particular alleged statement was, in the context of his trial, improper. Even assuming satisfaction of prong one and that the statements Petrey proffers are accurate, the four factors, on balance, weigh in favor of finding no due process violation here. *Cf., e.g.*, *Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009) (calling a defendant a "demon," "deadbeat," "thief," "creep," and "liar" did not violate due process). This claim is no basis for habeas relief.

Petrey also makes a cursory and unsupported *Brady*-based insinuation. DE #1-1, at 19. Essentially, Petrey asserts that he requested to play certain cassette tapes to the jury at trial, but the trial judge denied the request. *Id.* Even assuming this is true, it has nothing to do with *Brady*, which held only "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 83 S. Ct. 1194,

1196-97 (1963);[17] *see also, e.g.*, *LaMar v. Houk*, 798 F.3d 405, 415-16 (6th Cir. 2015). *Brady* does not regulate presentation of evidence to the jury at trial. *See, e.g.*, *United States v. Phillip*, 948 F.2d 241, 255 (6th Cir. 1991).

Finally, Petrey tacks on an argument that "Officer Smith failed to show a warrant on entry of Petitioner's apartment and failed to mirandize him upon arrest and questioning him at his apartment." DE #1-1, at 19. The first of these statements—concerning law enforcement's alleged failure to show Petrey a copy of the warrant "on entry" of his apartment—is inconsequential. *United States v. Grubbs*, 126 S. Ct. 1494, 1501 (2006) ("[N]either the Fourth Amendment nor Federal Rule of Criminal Procedure 41 imposes . . . a requirement" of "the executing officer [having to] present the property owner with a copy of the warrant before conducting his search."); *Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco and Firearms*, 452 F.3d 433, 443-44 (6th Cir. 2006) (*en banc*); *cf. United States v. Buckner*, 717 F.2d 297, 301 (6th Cir. 1983) ("The police, at the time of the entry into the defendant's mother's apartment, did not have an arrest warrant in their possession. In fact, at that time, no warrant had been issued with respect to the bank robbery. The police, however, did have reliable knowledge of a state bench warrant for the defendant's arrest on unrelated charges. No more was necessary. The fact that the officers did not have the arrest warrant in hand is of no consequence.").[18]

The second of these statements—Petrey's unadorned assertion that law enforcement "failed to mirandize him"—likewise leads to no relief. An alleged failure to Mirandize a defendant (which is all Petrey asserts) is not itself a constitutional violation. *Oregon v. Elstad*,

---

[17] In an earlier state-court brief, in fact, Pelfrey acknowledged that the cassettes were "on the discovery package[.]" DE #13-5, at 87.

[18] Perhaps the issue "whether it would be unreasonable under the Fourth Amendment for an executing officer to refuse to produce a warrant at the outset of a search *upon the request* of an occupant" remains open, *see United States v. Thompson*, 667 F. Supp. 2d 758, 763 (S.D. Ohio 2009) (emphasis in original), but Petrey makes no such allegation here.

105 S. Ct. 1285, 1293 (1985) (stating that "a simple failure to administer the [*Miranda*] warnings" is not necessarily a constitutional violation: "The failure of police to administer *Miranda* warnings does not mean that the statements received have actually been coerced, but only that courts will presume the privilege against compulsory self-incrimination has not been intelligently exercised."); *New York v. Quarles*, 104 S. Ct. 2626, 2631 n.5 (1984) ("As the Miranda Court itself recognized, the failure to provide Miranda warnings in and of itself does not render a confession involuntary[.]" (no italics in original)); *Chavez v. Martinez*, 123 S. Ct. 1994, 2004 (2003) ("Chavez's failure to read *Miranda* warnings to Martinez did not violate Martinez's constitutional rights[.]"). *Miranda*, by its own terms, only regulates "the prosecution['s] . . . use [of] statements[.]" *Miranda v. Arizona*, 86 S. Ct. 1602, 1612 (1966); *see also Chavez*, 123 S. Ct. at 2004 ("[T]he *Miranda* exclusionary rule as a prophylactic measure to prevent violations of the right protected by the text of the Self–Incrimination Clause—the admission into evidence in a criminal case of confessions obtained through coercive custodial questioning.").[19] Petrey, who does not develop this claim in any consequential way, is entitled to no relief on this ground.

---

[19]    Petrey also makes an embedded allegation concerning Officer Smith's alleged failure to cease questioning after Petrey requested a lawyer. Specifically, Movant wrote: "Petrey asked of [Smith] if he was not allowed to call his attorney. This was ignored but Petitioner was allowed to call his sister, Clarene VonRiestenberg. Smith continued to question Petitioner in a fashion that would design a crime against him. Officer Smith's failure to address Petitioner's request for an attorney and continued questioning violated his equal protection under the laws of Kentucky and Federal as well, including due process." DE #1-1, at 15 (as in original). It does not appear Petrey presented this argument to the state courts, leading to obvious federal habeas consideration bars.

Even examining the merits, Petrey presents utterly no proof of the allegation, but assuming that he "asked" Smith "if he was not allowed to call his attorney," this would not require Smith to cease questioning. "The request for counsel must be express and unambiguous in order to require the cessation of questioning." *United States v. Dupree*, 323 F.3d 480, 486 (6th Cir. 2003); *Davis v. United States*, 114 S. Ct. 2350, 2355 (1994) ("[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." (emphasis in original)). Petrey asking Smith "if he was not allowed to call his attorney" is not, under the standard, an

G.     *Ineffective Assistance of Counsel*

In a final series of volleys, Petrey argues that he was denied effective assistance of counsel based on the following theories (here generally stated): counsel failed to (1) move for a balancing test; (2) move for a unanimous verdict; (3) impeach a witness; (4) challenge the victim's competency; (5) employ an expert witness; (6) challenge the indictment; (7) challenge the warrant and the issuance process; and (8) challenge the veracity of the Police Chief's statements. DE #1, at 13; *see also generally* DE #1-1. The Court will address each in turn.

When asserting an ineffective assistance claim, a petitioner must prove both deficient performance and prejudice. *Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence). In order to prove deficient performance, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S. Ct. at 2064. A petitioner meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 2064-65; *see also Hinton v. Alabama*, 134 S. Ct. 1081, 1088 (2014) (*per curiam*) (giving an overview of the *Strickland* test); *Padilla v. Kentucky*, 130 S.

---

express and unambiguous invocation of the right to counsel. *See Davis*, 114 S. Ct. at 2356-57 (suspect's statement that "maybe I should talk to a lawyer" was ambiguous and not a clear request for counsel); *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994) (statement that "it would be nice" to have an attorney was not a clear request for counsel); *United States v. Sierra-Estrada*, 248 F. App'x 973, 981 (10th Cir. 2007) ("I wonder if I could have a lawyer" was not an express and unambiguous invocation.); *Clark v. Murphy*, 331 F.3d 1062, 1071-72 (9th Cir. 2003) (state court determination that statements "I think I would like to talk to a lawyer" and "should I be telling you, or should I talk to an attorney" were ambiguous was not unreasonable); *Burket v. Angelone*, 208 F.3d 172, 198 (4th Cir. 2000) ("I think I need a lawyer" was not a clear request for counsel); *Diaz v. Senkowski*, 76 F.3d 61, 63-65 (2d Cir. 1996) ("I think I want a lawyer" and "Do you think I need a lawyer?" were not clear requests for counsel).

Ct. 1473, 1482 (2010) (same). Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 104 S. Ct. at 2065; *see also Burt*, 134 S. Ct. at 17-18 (referring to "*Strickland*'s strong presumption of effectiveness").

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 104 S. Ct. at 2064. In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 2069.

*Strickland* does not assure perfect counsel. Rather, the Sixth Amendment requires only a lawyer that performs reasonably, under prevailing professional norms, and does not cause an injury of constitutional prominence. *See, e.g.*, *Otte v. Houk*, 654 F.3d 594 (6th Cir. 2011) ("Not every bad lawyer violates the constitution. For counsel's performance to be deemed ineffective, it must be objectively deficient and cause prejudice to the defendant.") (citing *Strickland*); *Wilson v. Sirmons*, 536 F.3d 1064, 1083 (10th Cir. 2008) ("Counsel's performance must be 'completely unreasonable' to be constitutionally ineffective, not 'merely wrong.'") (citation omitted); *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) ("So the threshold issue is not whether Morrow's attorney was inadequate; rather, it is whether he was so manifestly ineffective that defeat was snatched from the hands of probable victory.").

Federal courts need not defer to state court factual findings regarding the performance and/or prejudice prongs of the effectiveness analysis. However, the "underlying facts" supporting such state-court decisions warrant deference. *Strickland*, 104 S. Ct. at 2070. "The

pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Richter*, 131 S. Ct. at 785. Thus, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* It is "difficult" to establish a state court's application of *Strickland* as unreasonable under § 2254(d); both standards are "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 788 (citations omitted); *accord Woods*, 135 S. Ct. at 1376 (When reviewing claims of ineffective assistance of counsel, the Court's review "must be doubly deferential in order to afford both the state court and the defense attorney the benefit of the doubt." (internal quotation marks removed) (quoting *Burt*, 134 S. Ct. at 13)). Habeas courts must "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Richter*, 131 S. Ct. at 788. Under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Additionally, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* (citation omitted).

### 1.     Failure to Move for a Balancing Test

First, Petrey argues that his counsel was ineffective for failing to move for a balancing test "to determine the truthfulness / untruthfulness of [the] victim's false testimony[.]" DE #1, at 13. The Kentucky Court of Appeals, reviewing the RCr 11.42 denial, found this issue improperly presented because Petrey did not raise it on direct appeal. *See Petrey II*, 2015 WL 4880273, at *1. This means, under the applicable standard, that Petrey procedurally defaulted the claim. *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) ("Under the procedural default rule, a federal

court acting on a state prisoner's habeas petition will not review a question of federal law if the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is independent of the federal question and is adequate to support the judgment." (internal quotation marks removed)). Petrey does not confront this hurdle.

Even considering the factless claim on the merits, the Court has difficulty understanding the import of Petrey's argument. Charitably construed, Petrey's argument seems to be that counsel was ineffective for failing to move for exclusion of the victim's testimony per KRE 403. As with prior arguments, Petrey appends no meat to this skeletal claim. He does not demonstrate how or why such a motion would have been successful, and he does not demonstrate (or even allege) that the result of the trial would have been different if counsel had so moved. He provides no specifics of the Rule 403 factors that would weigh in favor of exclusion of testimony that obviously was highly relevant to the trial. In sum, Petrey fails to confront any element of his necessary showings, and the claim is otherwise barred. He is entitled to no habeas relief here.

### 2.    Failure to Move for a Unanimous Verdict

Second, Petrey argues that his counsel was ineffective for failing to move for a unanimous verdict "when the jury failed to distinguish / differentiate each count of sodomy from the other[.]" DE #1, at 13. The Kentucky Court of Appeals, in the post-conviction posture, noted the same fatal flaw as above (¶ G.1) in Petrey's presentation of this issue. *See Petrey II*, 2015 WL 4880273, at *1. Likewise, this means, under the applicable standard, that Petrey procedurally defaulted the claim. *Lovins*, 712 F.3d at 295. Even considering the merits, the Court views this claim as frivolous. The jury, of course, found Petrey guilty of each count of sodomy individually. *See* DE #13-3, at 43-46 (Verdicts); *see also id.* at 36-39 (Jury Instructions: V (white sex toy), VI (wood sex toy), VII (rubbing penis in and/or on Majewski's mouth), VIII (placing

mouth on Majewski's vagina)). The trial court required unanimous verdicts. *Id.* at 32 (Instruction I). Counsel is not ineffective for not making a meritless motion. *Holmes v. United States*, 281 F. App'x 475, 482 (6th Cir. 2008). This claim is procedurally barred and groundless.

### 3.    Failure to Impeach a Witness

Third, Petrey argues that his counsel was ineffective for failing to impeach a witness "whose mental and drug use history should in no way have allowed her to testify[.]" DE #1, at 13. The Kentucky Court of Appeals found no ineffectiveness on this ground because the statute on which Petrey relied was repealed effective in 1992, well before Petrey's trial. *See Petrey II*, 2015 WL 4880273, at *1.

Here, even assuming that Petrey's argument is a general failure-to-impeach argument and not tied to the repealed statute, and setting aside any potential procedural bars, he fails to provide any basis for an ineffectiveness finding. Foundationally, Petrey does not even identify which witness he is complaining about. He does not identify what particular actions he wishes counsel had taken to impeach the unidentified witness.[20] Nor does Petrey discuss the context of any testimony. Petrey also completely ignores the necessary prejudice prong—*i.e.*, he does not, in any way, enunciate or explain how the result of the trial would have been different if counsel had brought out an unidentified witness's "mental and drug use history." There is no basis for § 2254 relief here.

---

[20] If Petrey intends to refer to Majewski, counsel *did* seek to cast doubts on her credibility through use or attempted use of KRE 412 evidence. *See* DE #13-3, at 27-28 (Motion to Allow Evidence in Conformity with KRE 412). Further, Petrey's own appeal brief narrates Majewski's many admissions during her trial testimony to use of and / or addiction to various drugs. DE #13-4, at 6.

4.    Failure to Challenge the Victim's Competency

Fourth, Petrey argues that his counsel was ineffective for failing to "[c]hallenge [the] victim's competency under KRE 601[.]" DE #1, at 13. The Kentucky Court of Appeals, reviewing the RCr 11.42 denial, found no ineffectiveness in counsel's failure to challenge the victim's competency to testify. *See Petrey II*, 2015 WL 4880273, at *2. The Court reprints the sturdy analysis:

> Petrey fails to provide any specific facts to demonstrate the victim's alleged incompetency to testify. Petrey does not allege how the drugs may have affected the victims' ability to testify; rather, Petrey merely makes general allegations that the victim was incompetent. Consequently, we do not believe Petrey's vague allegations provide sufficient specificity to demonstrate that trial counsel was ineffective for failing to challenge the victim's competency to testify at trial.

*Id.*

This treatment of the issue undoubtedly is reasonable. Especially in this "doubly deferential" setting, the Kentucky courts' assessment under *Strickland* of counsel's performance without question passes muster.[21] In this Petition, Petrey likewise fails to provide any facts or evidence demonstrating Majewski's incompetence to testify—only a factless allegation of such. This is no basis from which to conclude that counsel acted ineffectively.

5.    Failure to Use an Expert Regarding Petitioner's Mental Capacity

Fifth, Petrey argues that his counsel was ineffective for failing to use an "expert witness to testify to Petitioner's mental incapacity[.]" DE #1, at 13. The Kentucky Court of Appeals, reviewing the RCr 11.42 denial, found no ineffectiveness in counsel's alleged failure to retain an expert to testify to Petrey's competence to stand trial. *See Petrey II*, 2015 WL 4880273, at *2. Repeating the analysis:

---

[21] "Moreover, counsel can hardly be ineffective for arguing unsuccessfully against an evidentiary ruling determined to be correct on direct appeal." *Robinson*, 412 F. App'x at 842.

34

The record reveals that trial counsel did request that Petrey's mental competency be evaluated, and such evaluation was subsequently conducted at the Kentucky Correctional Psychiatric Center. In the evaluation, it was noted that Petrey did not agree with trial counsel's advice to seek a 'psychological defense.' Petrey's Brief at 15. The conclusion of the evaluation was that Petrey was competent to stand trial. Therefore, as Petrey was determined to be mentally competent, we do not believe trial counsel was ineffective for failing to have an expert to testify as to his alleged mental incompetence.

*Id.*

Again, this assessment undoubtedly is reasonable. As the Kentucky court noted, counsel *did* initiate an expert evaluation of Petrey's competency, and the doctor found Petrey competent. Petrey now offers no details of what expert he wishes counsel had retained or why that expert would have found him to be incompetent. Petrey does not proffer the desired expert testimony or submit an expert report. There is no basis for a finding of ineffectiveness here.[22]

6.    Failure to Challenge the Indictment

Sixth, Petrey argues that his counsel was ineffective for failing to "[c]hallenge the indictments[.]" DE #1, at 13. It does not appear that Petrey previously or properly raised this ground in any earlier proceeding. Despite the obvious default, Petrey expresses utterly no factual basis for a challenge to the indictment. He gives no specifics regarding the challenge he wishes counsel had made. Because the claim is completely devoid of any factual basis or specifics, it provides no basis for habeas relief.

7.    Failure to Challenge the Warrant and the Issuance Process

Seventh, Petrey argues that his counsel was ineffective for failing to "[c]hallenge the warrant and the process of how it was unlawfully obtained[.]" DE #1, at 13. It does not appear

---

[22] The Court folds within this IAC sub-argument Petrey's independent, but connected, assertion that his "right to compulsory process was violated when no expert witnesses were compelled to testify to his competency, nor to verify evidence presented at trial[.]" DE #1-1, at 10. Obviously, if counsel did not seek to compel an expert's attendance, the right to compulsory process was not violated (because it was not exercised at all).

Petrey previously raised this specific ineffectiveness allegation. Regardless, again setting aside any default, the claim is patently meritless. As a starting point, of course, counsel *did* challenge the warrant through filing a motion to suppress. *See* DE #13-3, at 5-9. Petrey fully recognized this. DE #1-1, at 3 ("Motion to suppress evidence was made[.]"). The Kentucky courts denied that motion, but that does not mean counsel was ineffective. Additionally, the Kentucky courts, and this Court previously, in part III.A, determined there to be no constitutional infirmities in the subject warrant. Because there was no underlying constitutional violation, Petrey's assertion that counsel was ineffective for failure to challenge the warrant and the process by which it was obtained plainly fails. *Kimmelman v. Morrison*, 106 S. Ct. 2574, 2583 (1986) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious[.]"); *Ray v. United States*, 721 F.3d 758, 763 (6th Cir. 2013) ("Because Ray has not demonstrated that his Fourth Amendment claim has merit, his underlying ineffective assistance of counsel claim fails.").

### 8.    Failure to Challenge the Veracity of the Police Chief's Statements

Eighth, Petrey argues that his counsel was ineffective for failing to "[c]hallenge the veracity of the Police Chief's statements as to his foreknowledge of the victim whereas he stated he had no contact with her prior to the complaint while record clearly shows that to be untrue[.]" DE #1, at 13. The only possible factual basis Petrey gives for this claim is an alleged "prior association" between Smith and Majewski "in the community of [P]ark Hills, Kentucky and via the telephone[.]" DE #1-1, at 15; *see also id.* at 18 (referencing Majewski calling Smith concerning possible eviction); DE #1-2, at 29 (on May 20, Smith saying that Majewski "called me the other day all upset that the apartment management wanted to evict" her).

36

The Court simply sees no consequence to this argument. First, Petrey does not identify where Smith allegedly said that he "had no contact with [Majewski] prior to the complaint[.]" The Court has scoured the record and cannot find a reference to such a comment. Even if Smith did say that, and even if Petrey's assertion that they were previously associated and possibly spoke over the phone was true, Petrey does not explicate what impact this murky argument would have on the case. Further, Smith's eviction comment in no way indicates that Smith and Majewski were associated prior to warrant issuance; all it shows, at most, is that five days after their initial meeting, Smith acknowledged that Majewski had called him "the other day" upset about a possible eviction. This is no proof that Smith and Majewski were associated pre-May 15; the context suggests otherwise. Thus, Petrey makes no showing of a lawyer's ineffective performance when he submits no proof or evidence of these foggy claims, and second, when he makes utterly no attempt to satisfy the prejudice prong. That is, Petrey does not demonstrate that the result of his trial would have been different if counsel had challenged Smith's statements on this reedy basis. Accordingly, this claim leads to no relief.

9.    Conclusion

As to all asserted IAC grounds and theories, Kentucky reasonably denied Petrey relief, or Petitioner is not otherwise entitled to habeas relief on these claims.

H.    Evidentiary Hearing

The Court perceives no need for a hearing prompted by this petition. The motion and extensive record in the case conclusively show that Petitioner is entitled to no relief. *See* 28 U.S.C. § 2254(e)(2); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1399 (2011) ("[W]hen the state-court record 'precludes habeas relief' . . ., a district court is 'not required to hold an evidentiary hearing.'" (quoting *Schriro v. Landrigan*, 127 S. Ct. 1933, 1940 (2007))); *Williams*, 120 S. Ct. at

37

1488-91; *Ivory v. Jackson*, 509 F.3d 284, 298 (6th Cir. 2007); *Stanford v. Parker*, 266 F.3d 442, 459-60 (6th Cir. 2001) (evidentiary hearing not required under § 2254 when "the petitioner's claims are . . . without merit."). Accordingly, Petrey is not entitled to an evidentiary hearing.

## IV. CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a petitioner has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard requires a petitioner to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *see also Miller-El*, 123 S. Ct. at 1039-40 (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S. Ct. at 1604. Petitioner has not made a "substantial showing" as to any claimed denial of rights; his claims all conclusively fail. Per the above discussion, reasonable jurists would not find the Court's substantive and procedural determinations debatable. Accordingly, the Court recommends that the District Court entirely deny a Certificate of Appealability.

## V.    CONCLUSION

For the stated reasons, the Court **RECOMMENDS** that the District Judge **DENY** and **DISMISS WITH PREJUDICE** the petition (DE #1) and **DENY** a Certificate of Appealability.

\*    \*    \*    \*    \*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 27th day of December, 2016.



Signed By:

*Robert E. Wier*

United States Magistrate Judge